UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-60804-CIV-WPD

RENGIN GUNDOGDU,

    Plaintiff,

v.

LINKEDIN CORPORATION,

    Defendant.
_____/

## OMNIBUS ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE is before the Court on Defendant LinkedIn Corporation ("LinkedIn")'s Motion to Dismiss Plaintiff's Complaint or, Alternatively, Motion to Transfer (the "Motion to Dismiss") [DE 36] and Plaintiff Rengin Gundogdu ("Plaintiff")'s Motion for Temporary Injunction [DE 27] (the "Motion for Preliminary Injunction"). The Court has carefully considered the Motions [DE's 27, 36], the Responses [DE's 34, 37], the Reply [DE 38][1], and is otherwise fully advised in the premises. For the reasons stated herein, the Court grants LinkedIn's Motion to Dismiss and denies Plaintiff's Motion for Preliminary Injunction.

**I. BACKGROUND**

On March 13, 2023, Plaintiff commenced a prior action against LinkedIn for alleged violations of Plaintiff's First Amendment rights and breach of contract based on the closing of Plaintiff's LinkedIn.com account. *See Rengin Gundogdu v. LinkedIn Corporation*, Case No. 23-CV-60465-WPD (the "Prior Action").[2] On March 13, 2023, the Court dismissed Plaintiff's

---

[1] The Court notes that Plaintiff did not file a timely reply in support of her Motion for Preliminary Injunction [DE 27].
[2] The Court takes judicial notice of all the pleadings and orders in the Prior Action, *Rengin Gundogdu v. LinkedIn Corporation*, Case No. 23-CV-60465-WPD.

1

complaint without prejudice for lack of subject matter jurisdiction, failure to state a claim, and because the complaint might be frivolous. *See* Prior Action, [DE 8]. On March 29, 2023, Plaintiff filed an amended complaint, bringing claims against LinkedIn for breach of contract and religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* Prior Action, [DE 9]. The Court again dismissed Plaintiff's claims without prejudice for failure to rectify many of the deficiencies identified by the Court and failing to state a claim. *See* Prior Action, [DE 10]. The Court closed the case and instructed Plaintiff that if she wished to file a new or amended case, she must do so under a new case number. *See id.*

On May 2, 2023, Plaintiff commenced the instant action against LinkedIn. *See* [DE 1]. Plaintiff alleges that LinkedIn violated Title VII ("First Claim for Relief") and breached its express warranties and contract with Plaintiff ("Second Claim for Relief"). *Id.* Plaintiff seeks compensatory damages, financial relief, and temporary reinstatement of her LinkedIn account until this proceeding has concluded. *Id.*

According to the factual allegations of the Complaint [DE 1]:[3] Plaintiff is an independent contractor with an MBA who runs a consulting company, Zorg World, LLC, in the telecommunications industry. *Id.* at ¶ 3. Plaintiff describes herself as an activist who creates awareness on social media. *Id.* at ¶ 16.

Plaintiff maintained an active personal account on LinkedIn.com for nearly twenty years. *Id.* at ¶ 13. Plaintiff used her personal account to keep in touch with potential clients and previous coworkers, receive news, and look for job opportunities. *Id.* at ¶¶ 13, 21. In addition to her personal account, Plaintiff operated a business account for her small business, Zorg World, LLC. *Id.* at ¶ 13. Plaintiff used the business account to create brand awareness, attract new

---

[3] All facts set forth in the background are according to the allegations of the Complaint [DE 1], which the Court assumes as true for purposes of the Motion.

clients, and hire employees for her clients. *Id.* at ¶¶ 13, 15. Plaintiff promoted her consulting business through both her personal and business accounts. *Id.* at ¶ 15. Plaintiff claims that her business account was crucial to the success and continuity of her small business. *Id.*

Plaintiff claims LinkedIn closed her personal account in February 2022 after she shared her religious opinions, which are conservative in nature. *Id.* at ¶ 16. By closing Plaintiff's personal account, LinkedIn also disabled access to her business account. *Id.* at ¶ 22. Plaintiff alleges she lost income because she could not access her account for almost a year. *Id.* at ¶ 16. Plaintiff wrote LinkedIn support, and her account was restored in November 2022. *Id.* at ¶ 16. Plaintiff continued to share her religious conservative opinions on LinkedIn's platform. *Id.* at ¶ 17. Then in January 2023, Plaintiff's account was closed again for sharing "misleading content" about the COVID-19 vaccines. *Id.* Plaintiff claims that her beliefs against the COVID-19 vaccines are rooted in religion. *Id.* Plaintiff claims she has sustained personal and economic injury as a result of being de-platformed by LinkedIn. *Id.* at ¶¶ 1, 5–6, 13–24.

In her First Claim for Relief, Plaintiff alleges that LinkedIn engaged in religious discrimination, in violation of Title VII, when it de-platformed Plaintiff and labeled her religious conservative opinions as "misinformation." *Id.* at ¶¶ 25, 27. Plaintiff characterizes LinkedIn as an employment agency for purposes of Title VII because the platform provides job-search functions. *Id.* at ¶ 24.

In her Second Claim for Relief, Plaintiff alleges that LinkedIn breached its User Agreement by "block[ing] her right to be more productive and successful," modifying "the meaning of her expression by labeling it misinformation," and "misleadingly promis[ing] freedom of express [in] its User Agreement." *Id.* at ¶¶ 30–31, 33. Plaintiff also alleges that LinkedIn breached its express warranty when it represented itself, through its marketing and its

3

User Agreement, to be a trustable platform where Plaintiff could freely share her opinions and find job opportunities. *Id.* at ¶ 30. Plaintiff alleges that LinkedIn does not act in good faith when moderating content on its platform because it favors liberals and discriminates against conservatives. *Id.* at ¶ 32.

On June 2, 2023, Plaintiff filed a Motion for Preliminary Injunction, requesting an order requiring LinkedIn to reinstate Plaintiff's personal and business LinkedIn.com accounts pending trial. *See* [DE 27]. On June 30, 2023, LinkedIn filed a Motion to Dismiss, seeking dismissal of each of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* [DE 36]. Alternatively, LinkedIn requests that the Court transfer this matter to the U.S. District Court for the Northern District of California pursuant to the forum-selection clause in LinkedIn's User Agreement. *See id.*

## II.    LINKEDIN'S MOTION TO DISMISS

### A. Legal Standard

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v.*

*Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984)).

The Court notes that Plaintiff is *pro se*. A *pro se* litigant's pleadings must be construed more liberally than pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) ("*pro se* pleadings are held to a less stringent standard than those pleadings drafted by attorneys and will, therefore, be liberally construed") (citations omitted). However, "this leniency does not give a court license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

### B. Religious Discrimination Under Title VII

In her First Claim for Relief, Plaintiff alleges that LinkedIn violated Title VII of the Civil Rights Act when it de-platformed Plaintiff and labeled her religious conservative opinions as "misinformation." [DE 1] at ¶¶ 25, 27. In its Motion to Dismiss, LinkedIn argues that Plaintiff's Title VII claim should be dismissed because: (1) LinkedIn is not an "employment agency" within the meaning of Title VII; and (2) Plaintiff fails to state a claim for religious discrimination.

5

*1. LinkedIn is not an "employment agency" under Title VII*

First, LinkedIn argues that Plaintiff's Title VII claim fails because LinkedIn is not an employment agency as defined by 42 U.S.C. § 2000e(c). The Court agrees.

"It is illegal 'for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his . . . religion . . . .'" *E.E.O.C. v. Kelly Servs., Inc.*, 598 F.3d 1022, 1029–30 (8th Cir. 2010) (citing 42 U.S.C. § 2000e–2(b)). Title VII defines an "employment agency" as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e(c).

Although there are limited cases dealing with Title VII's definition of "employment agency," courts have found that one "regularly" undertakes to procure employees or employment opportunities only if they engage "to a *significant degree* in that kind of activity as their profession or businesses." *Brush v. S.F. Newspaper Printing Co.*, 315 F. Supp. 577, 580 (N.D. Cal. 1970) (emphasis added). In *Brush*, the court found that a newspaper company that published employment advertisements in its classified advertising section was not an "employment agency" under Title VII. *Id.* at 580. The plaintiff argued that the newspaper company met the definition of "employment agency" under Title VII because "newspapers, like employment agencies, do regularly undertake 'to procure employees for an employer or to procure for employees opportunities to work for an employer.'" *Id.* at 580. The court rejected this argument, reasoning that Congress did not intend to broaden the definition of employment agency to encompass entities that merely advertise content, including job postings, related to employment. *Id.* at 582; *see also Radentz v. Am. Ass'n of Physician Specialists, Inc.*, No.

EDCV1301486SJOOPX, 2014 WL 12601014, at *3 (C.D. Cal. Nov. 10, 2014) (discussing the holding in *Brush*).

In *Wilborn v. Southern Union State Community College*, the court held that an occupational training program that billed itself as a "highly intensive occupational training program with the end result being employment in the field" was an employment agency for purposes of Title VII. 720 F. Supp. 2d 1274, 1291 (M.D. Ala. 2010). The occupational training program required its employees to place a certain percentage of program participants within a job in the trucking field. *Id.* To meet this required percentage, the program required participants to file applications with five different companies, helped participants fax their job applications, invited recruiters from companies to visit the program, and facilitated on-site job interviews. *Id.* at 1292. The court reasoned that the training program did not merely provide participants with unique access to employment opportunities; instead, it required participants to *actively* pursue employment opportunities, thus engaging "to a significant degree" in procuring employment for its participants. *Id.* at 1291–92.

Here, Plaintiff alleges that LinkedIn is a social network where members "share their achievements, news, interests, ideas, and opinions," promote their businesses, and search for jobs. [DE 1] at ¶¶ 11–12. Plaintiff alleges that she used LinkedIn to receive news, promote her business, attract new clients, keep in touch with potential clients and previous coworkers, and look for job opportunities. *Id.* at ¶¶ 13, 15, 21. To support her claim that Title VII applies to LinkedIn, Plaintiff alleges that "LinkedIn.com acts an employment agency by providing job-search on its platform." *Id.* at ¶ 24.

Plaintiff's allegations are insufficient to establish that LinkedIn acted as an employment agency under Title VII. While LinkedIn is more involved in procuring employment opportunities

7

than the newspaper company in *Brush*, LinkedIn's involvement falls far below that of the occupational training program in *Wilborn*. Unlike the training program in *Wilborn*, which actively assisted participants in the application and interview process with the chief objective of job placement, Plaintiff does not allege that LinkedIn is actively involved in the application and interview process for any specific employers, or that its main purpose was to procure employment for Plaintiff. *Wilborn*, F. Supp. 2d at 1291–92. Though Plaintiff alleges that LinkedIn provided a platform for her to look for job opportunities and promote her business, merely providing users with access to employment opportunities does not rise to the level of "a significant degree" of engagement in employment-related activities. *Brush*, 315 F. Supp. at 580; *see also Radentz*, 2014 WL 12601014, at *5 (rejecting argument that nonprofit corporation that provided board certification for physicians was an employment agency because it "merely provide[d] a venue in which potential employers and candidates can exchange information regarding employment opportunities").

In Plaintiff's Response to LinkedIn's Motion to Dismiss [DE 37], Plaintiff argues that LinkedIn actively assists in the job placement through its use of its advanced sorting features, which "categoriz[es] jobs based on jobs seekers' needs," "show[s] . . . recommendations to the job posters" and "help[s] recruiters to select employees based on their requirements." [DE 37] at ¶ 12. Plaintiff also argues that companies pay LinkedIn to advertise their open positions. *Id.* These facts were not pled in the Complaint. Plaintiff cannot amend the Complaint through a brief in opposition to a motion to dismiss. *See McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015). In any event, it is well-established that Title VII was not intended to encompass entities that merely advertise content related to employment or allow users to share information

regarding employment opportunities. *See Brush*, 315 F. Supp. at 580; *see also Radentz*, 2014 WL 12601014, at *5

Because Plaintiff's allegations are insufficient to show that LinkedIn had significant involvement in procuring employment for its members, including Plaintiff, LinkedIn does not qualify as an "employment agency" under Title VII.

 2.  *Plaintiff fails to state a claim for religious discrimination under Title VII*

Even if Plaintiff could establish that LinkedIn is an "employment agency" within the meaning of Title VII, LinkedIn argues that Plaintiff fails to state a plausible claim for religious discrimination. The Court agrees.

A plaintiff can establish a *prima facie* case of religious discrimination "by showing that they (1) had a bona fide religious belief that conflicted with an employment requirement, (2) informed their employer of their belief, and (3) was disciplined or discharged for failing to comply with the conflicting employment requirement." *Walker v. Indian River Transp. Co.*, 741 F. App'x 740, 746 (11th Cir. 2018) (citations omitted) (explaining the elements of religious discrimination in the employer/employee context). Courts have applied this general standard in the employment agency context. *See Kelly Servs.*, 598 F.3d at 1029–30 (applying test to religious discrimination against employment agency under Title VII). However, the scope of prohibited practices by employment agencies is typically limited to discriminatory practices relating to referrals. *Id.* at 1030 (citing *Williams v. Caruso*, 966 F. Supp. 287, 297 (D. Del. 1997)).

In the Complaint, Plaintiff generally alleges that LinkedIn closed her account after she shared her religious opinions, including her opinions of the COVID-19 vaccines, which she claims are "rooted in religion." [DE 1] at ¶¶ 5, 16–17. Plaintiff does not specifically allege any

9

facts suggesting that she relayed these religious beliefs to LinkedIn.[4] In addition, Plaintiff alleges that LinkedIn's actions have "deprived [her] [of] [her] right to have a LinkedIn.com account so she can find and land job opportunities." *Id.* at ¶ 26. But Plaintiff does not provide any specific allegations suggesting that LinkedIn failed or refused to refer her to any specific employment opportunity because of her religious beliefs, as is required to state a Title VII claim against an employment agency. *Kelly Servs*, 598 F.3d at 1030; *see also Koger v. Allegheny Intermediate Unit*, No. CIV.A. 10-1466, 2012 WL 603565, at *12 (W.D. Pa. Feb. 24, 2012), *aff'd,* 495 F. App'x 266 (3d Cir. 2012) ("[Employment agencies] can be held liable only for discrimination in referrals, failure to refer, or other discriminatory practices relating to referral."). As such, Plaintiff fails to state a plausible claim for religious discrimination under Title VII, and this claim is due to be dismissed.

### C. Breach of Express Warranty and Contract

In her Second Claim for Relief, Plaintiff brings a claim for breach of express warranty and contract under LinkedIn's User Agreement. Under Florida law, the elements of a breach of contract claim are: (1) a valid contract between the parties; (2) a material breach of that contract; and (3) damages resulting from the breach. *Beck v. Lazard Freres & Co.*, LLC, 175 F.3d 913, 914 (11th Cir. 1999); *Deauville Hotel Mgmt, LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017); *Wistar v. Raymond James Fin. Servs., Inc.*, 365 F. Supp. 3d 1266, 1269 (S.D. Fla. 2018).

Upon careful review of the allegations in the Complaint, the Court finds that Plaintiff fails to plausibly state a claim for breach of contract. In the Complaint, Plaintiff vaguely alleges

---

[4] In Plaintiff's Response to LinkedIn's Motion to Dismiss [DE 37], Plaintiff argues that she sent several emails and a cease-and-desist letter to LinkedIn in January 2023, informing LinkedIn that "she is against taking the vaccine due to her religious conservative opinions[.]" [DE 37] at ¶ 7. Once again, these facts were not clearly pled in the Complaint. Plaintiff cannot amend the Complaint through a brief in opposition to a motion to dismiss. *See McKally,* F. Supp. 3d at 1317. Even if the allegations were pled in the Complaint, Plaintiff's after-the-fact actions fail to establish that LinkedIn failed or refused to refer her to specific employment opportunities because of her religious beliefs. *Kelly Servs*, 598 F.3d at 1030.

that LinkedIn breached its User Agreement by "block[ing] her right to be more productive and successful," modifying "the meaning of her expression by labeling it misinformation," and "misleadingly promis[ing] freedom of express [in] its User Agreement." [DE 1] at ¶¶ 30–31, 33. Plaintiff further claims that LinkedIn acted in bad faith by acting "inconsistently with its terms of service" and "favor[ing] liberals and discriminat[ing] [against] conservatives." *Id.* at ¶ 32. But Plaintiff fails to allege specific provisions of the User Agreement which correspond to these alleged breaches. Instead, Plaintiff relies on the following terms of LinkedIn's User Agreement:

> Our mission is to connect the world's professionals to allow them to be more productive and successful. Our services are designed to promote economic opportunity for our members by enabling you and millions of other professionals to meet, exchange ideas, learn, and find opportunities or employees, work, and make decisions in a network of trusted relationships.

*See id.* at ¶ 30.

> While we may edit and make format changes to your content (such as translating or transcribing it, modifying its size, layout or file type or removing metadata), we will not modify the meaning of your expression.

*See id.* at ¶ 31.

> We may modify this Contract, our Privacy Policy and our Cookies Policy from time to time.

*See id.* at ¶ 32.

> You own all of the content, feedback and personal information you provide to us, but you also grant us a non-exclusive license to it.

*See id.* at ¶ 34.

However, Plaintiff fails to explain how LinkedIn breached any of these terms when it allegedly discriminated against Plaintiff for her conservative viewpoints, labeled her content as "misinformation," and de-platformed her. *See* Prior Action, [DE 10] (dismissing breach of contract claim on the same basis). For example, Plaintiff alleges that LinkedIn "blocked her right

to be more productive and successful," but fails to explain how doing so would be a breach of the User Agreement. [DE 1] at ¶ 30. Plaintiff further contends that LinkedIn modified the meaning of her expression by labeling her posts as misinformation. *Id.* at ¶ 31. However, to "modify" is to change, alter, or make different. *Modify*, Black's Law Dictionary (2nd ed. 1910). Plaintiff does not allege any clear, specific facts suggesting that LinkedIn changed or altered her posts. Instead, Plaintiff alleges that LinkedIn closed her account for sharing "misleading content" about the COVID-19 vaccines. [DE 1] at ¶ 17. Likewise, it is unclear to the Court how "favor[ing] liberals and discriminat[ing] [against] conservatives" breaches any provision of the User Agreement. *Id.* at ¶ 32. [5] Because Plaintiff fails to plausibly allege any breach of the User License Agreement by LinkedIn, Plaintiff's breach of contract claim fails as a matter of law.

Plaintiff also fails to state a plausible claim for breach of express warranty. Plaintiff alleges that LinkedIn breached its express warranty when it represented itself, through its marketing and its User Agreement, to be a trustable platform where Plaintiff could freely share her opinions and find job opportunities. *Id.* at ¶ 30. "[T]o state a claim for breach of an express warranty, the plaintiff must first identify the express warranty that the defendant allegedly breached." *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1324 (S.D. Fla. 2020) (internal citations omitted) (citing *Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015)).

Here, Plaintiff fails to specifically identify the express warranty that LinkedIn breached, and none of the contractual provisions Plaintiff cites can reasonably be interpreted as an express

---

[5] It appears that Plaintiff is attempting to disguise her previously dismissed constitutional claims as a breach of contract claim. For example, in Plaintiff's Second Claim for Relief, Plaintiff asserts that "[Plaintiff]'s posts are taken down and she is banned from [sic] LinkedIn.com platform for expressing her conservative views that is [sic] her constitutional right. Exercising freedom of religion . . . is central to living in an open and fair society." [DE 1] at ¶ 33.

warranty. While Plaintiff alleges that LinkedIn "breached express warranties about its . . . platform . . . because its statements about the Product [the website] were false and the Product does not conform to its affirmations and promises," she does not allege what those affirmations or promises are. *Id.* at ¶ 35. Accordingly, dismissal of Plaintiff's Second Claim for Relief is warranted.[6]

### D. Dismissal with Prejudice

The Court dismisses Plaintiff's Complaint against LinkedIn with prejudice because amendment would be futile. A district court's discretion to dismiss a complaint without leave to amend "is severely restrict[ed] by Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires." *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (citation omitted). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "The decision to grant or deny leave to amend lies within the sound discretion of the district court." *Pilkington v. United Airlines, Inc.*, 158 F.R.D. 508, 509 (M.D. Fla. 1994).

Plaintiff's claims against LinkedIn are subject to dismissal for many of the same reasons addressed by the Court in its orders in the Prior Action. *See* Prior Action, [DE's 8, 10]. Plaintiff has now had three opportunities to cure these deficiencies and attempt to adequately plead a claim against LinkedIn but has failed to do so. There is no indication that giving Plaintiff another

---

[6] Because the Court concludes that both of Plaintiff's claims must be dismissed for the reasons stated *supra*, the Court does not consider LinkedIn's alternative argument to transfer this matter to the U.S. District Court for the Northern District of California.

opportunity to amend would cure these defects. Therefore, the Complaint is dismissed with prejudice. *See, e.g.*, *McDonough v. City of Homestead*, 771 F. App'x 952, 956 (11th Cir. 2019) (affirming dismissal with prejudice where *pro se* plaintiff repeatedly "received notice of his complaint's defects," yet failed to remedy them).

### III.     PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In her Motion for Preliminary Injunction, Plaintiff requests an order requiring LinkedIn to reinstate Plaintiff's personal and business LinkedIn.com accounts pending trial. *See* [DE 27]. Plaintiff argues that she "has a right to be released from LinkedIn.com jail while pending trial" and that she has no other adequate remedy at law. *Id.* at ¶ 6–9. Plaintiff, however, fails to offer any legal argument in support of each cause of action in her Motion. In Response, LinkedIn argues that granting the injunction would hinder LinkedIn from practicing its First Amendment right to moderate content on its platform by forcing LinkedIn to allow Plaintiff's speech. *See* [DE 34]. Additionally, LinkedIn argues that Plaintiff has not satisfied her burden of proving each element of a preliminary injunction. *Id.*

To obtain a preliminary injunction, a party must demonstrate "(1) [that there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

Because Plaintiff's Complaint is dismissed with prejudice for failure to state a claim, *see supra*, Plaintiff cannot demonstrate a substantial likelihood of success on the merits. Therefore, Plaintiff is not entitled to a preliminary injunction.[7] Because "a court need not consider the

---

[7] "[W]here material facts are not in dispute, or where the facts sought are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *McDonald's Corp. v. Robertson,* 147 F.3d

remaining conditions prerequisite to injunctive relief" if "the movant is unable to establish a likelihood of success on the merits," the Court's analysis ends here. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

## IV.    CONCLUSION

Based upon the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. LinkedIn's Motion to Dismiss [DE 36] is **GRANTED**.

2. The Complaint [DE 1] is **DISMISSED WITH PREJUDICE**.

3. The Motion for Preliminary Injunction [DE 27] is **DENIED**.

4. The Clerk is directed to **CLOSE** this case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 4th day of August 2023.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record
rengingundogdu@hotmail.com

---

1301, 1312 (11th Cir.1998). The Court does not find an evidentiary hearing necessary because, even assuming the facts alleged by Plaintiff are true, Plaintiff is not entitled to the requested injunction.